FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 28 2016

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

U.S. COMMODITY FUTURES
TRADING COMMISSION,

      Plaintiff,

      v.

HENDRIK A. VAN BEUNINGEN
AND
DEBRINK TRADING FUND I, LLC,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.:
**1:16-CV-0978**

## COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

Plaintiff U.S. Commodity Futures Trading Commission ("Plaintiff," "Commission" or "CFTC") files its complaint against defendants Hendrik A. Van Beuningen ("Van Beuningen") and DeBrink Trading Fund I, LLC ("DeBrink") (collectively, "Defendants") and alleges as follows:

## I. BACKGROUND

1.    From at least January 2014 to at least January 2016, Van Beuningen, on behalf of DeBrink, an unregistered commodity pool operator ("CPO"), fraudulently solicited and accepted at least $505,000 from at least five members of the general public ("Pool Participants") for the purported purpose of pooling funds

in the DeBrink Trading Fund I (the "Pool") to trade foreign currency, "bond," oil, and gold futures contracts at a registered futures commission merchant ("FCM").

2.     Defendants transferred only approximately 45% of the Pool Participants' $505,000 to a trading account in the name of the Pool at an FCM ("FCM 1").

3.     Defendants' overall trading of Pool funds at FCM 1 was never profitable and nearly all of the Pool money was lost by September 30, 2015 (before additional Pool funds were received in November 2015).

4.     Despite the Pool's trading losses at FCM 1, Defendants fraudulently touted to Pool Participants on DeBrink's website that the Pool had a 19.14% return for 2014 and a 31.77% cumulative return through September 2015.

5.     Defendants also represented to Pool Participants, from 2014 to the present, that their money was safely invested with the Pool and returning a profit. Defendants periodically prepared online account statements and made them available via DeBrink's website to the Pool Participants. These account statements were false.

6.     In addition, Defendants misappropriated Pool Participants' funds. Defendants received at least $140,000 in Pool Participant funds from November 2015 to January 2016, and none of these funds ever made it into an

FCM account in the name of the Pool. Further, Defendants' false account statements referenced management fees that were far in excess of the amounts to which Defendants were entitled under agreements with Pool Participants.

7.     In October 2015, FCM 1 discovered an inconsistency between the Pool's trading results and Defendants' representations that the Pool had a 31.77% cumulative return through September 2015. FCM 1 asked Defendants to explain this discrepancy. Defendants prepared and provided to FCM 1 two fabricated trading account statements purportedly from another registered FCM ("FCM 2"). FCM 2 confirmed to FCM 1 that these trading account statements were complete fabrications, and FCM 1 froze the remaining Pool funds in DeBrink's trading account. Defendants have not informed the Pool Participants of these events.

8.     By the aforementioned conduct, and the conduct described herein, Defendants have engaged, are engaging in, or are about to engage in practices that violate the provisions of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq*. (2012), and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1.1 *et seq*. (2015). Specifically, they have engaged, are engaging or are about to engage in acts or practices in violation of Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1), and 9(1)

(2012); and Regulations 3.12(a), 4.20(a)-(c), and 180.1(a), 17 C.F.R. §§ 3.12(a), 4.20(a)-(c), and 180.1(a) (2015).

9.     When Van Beuningen committed the acts, omissions, and failures described herein, he did so within the scope of his agency, employment, and office with DeBrink; therefore, Van Beuningen's acts, omissions, and failures are deemed those of DeBrink pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2015).

10.     From at least January 2014 to the present (the "Relevant Period"), Van Beuningen controlled DeBrink, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, the acts of DeBrink described herein; therefore, Van Beuningen is liable for the violations by DeBrink of the Act and Regulations described herein pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

11.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to permanently enjoin Defendants' unlawful acts and practices and to compel their compliance with the Sections of the Act and Regulations described herein and to further enjoin Defendants from engaging in any commodity-related activity.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to,

trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and other such relief as the Court may deem necessary and appropriate.

12.   Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in this Complaint, and similar acts and practices, as more fully described below.

## II.  **JURISDICTION AND VENUE**

13.   The Court has jurisdiction over this action, pursuant to Section 6c of the Act, because it appears to the Commission that Defendants have engaged, are engaging, or are about to engage in conduct that constitutes a violation of the Act and the Regulations.

14.   Venue properly lies with the Court, pursuant to Section 6c(e) of the Act, in that Defendants reside and transact business in this District and acts and practices in violation of the Act and the Regulations have occurred within this District.

## III.  **PARTIES**

15.   Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and the Regulations promulgated

thereunder. The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street NW, Washington, DC 20581.

16. Defendant **Hendrik A. Van Beuningen** is an individual who resides in Brookhaven, Georgia, where he has resided throughout the Relevant Period. Van Beuningen was the sole member and manager of DeBrink. During the Relevant Period, Van Beuningen controlled the day-to-day operations of DeBrink, including, but not limited to, opening and controlling trading and bank accounts in the name of DeBrink, soliciting Pool Participants to invest in DeBrink, creating and maintaining DeBrink's website at *www.debrinktrading.com*, and preparing online account statements for and making them available to Pool Participants. During the Relevant Period, Van Beuningen acted as an associated person ("AP") of DeBrink, though Van Beuningen has never been registered with the Commission in any capacity. Further, during the Relevant Period, Van Beuningen controlled the day-to-day operations of DeBrink Trading, LLC, including, but not limited to, opening and controlling at least one bank account that held Pool Participant funds.

17. Defendant **DeBrink Trading Fund I, LLC** is a Georgia limited liability company formed by Van Beuningen on or about December 9, 2013, with its principal place of business located at 182 Meeting Lane, Atlanta, GA, 30342.

DeBrink's last corporate filing with the Georgia Secretary of State was in April 2014. DeBrink is engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and, in connection therewith, solicited, accepted, or received from others, funds, securities, or property, for the purpose of trading in commodity interests. During the Relevant Period, DeBrink was the CPO for the Pool. DeBrink has never been registered with the Commission or qualified for any exemption from registration.

## IV. FACTS

### A.    The Beginning of Defendants's Scheme

18.    On November 12, 2013, Van Beuningen registered a new website at the Internet address www.debrinktrading.com.

19.    On this website, Defendants claimed, among other things, that the Pool was an "Abnormal fund looking for Abnormal returns" and was "trading bond, yen, oil, gold and euro futures."

20.    On January 23, 2014, Defendants opened two bank accounts in the name of DeBrink. Previously, on November 25, 2013, Defendants had opened a bank account in the name of DeBrink Trading, LLC.

21.    One of the bank accounts in DeBrink's name was a savings account that has remained mostly dormant, with a balance never exceeding $150.

...

22. The other bank account in DeBrink's name received Pool Participants' funds.

23. On or about February 6, 2014, Defendants opened a futures trading account with FCM 1 in the name of the Pool. Defendants' first trade in the FCM 1 account took place on February 26, 2014. This was the only Pool futures trading account active during the Relevant Period.

24. Between February 2014 and January 2016, Defendants solicited and received at least $505,000 from at least five Pool Participants for the purported purpose of trading foreign currency, "bond," oil, and gold futures contracts.

25. Throughout the Relevant Period, Defendants failed to operate the Pool as an entity cognizable as a legal entity separate from that of DeBrink.

26. Throughout the Relevant Period, Pool Participants' funds were received in a DeBrink bank account, rather than in an account in the name of the Pool.

27. Throughout the Relevant Period, Defendants commingled Pool funds with non-Pool funds.

**B.   Defendants Misappropriated Pool Funds and Misrepresented Pool Trading Results**

28.   Between February 2014 and May 2015, Defendants received $365,000 from Pool Participants.  Of this amount, Defendants transferred only $228,405 to FCM 1.

29.   As of September 30, 2015, Defendants had lost nearly all the funds transferred to FCM 1 through unprofitable trading, with only $7,632.48 of the original $228,405 remaining.

30.   However, in October 2015, Defendants' website falsely claimed the Pool experienced a 19.14% return for 2014 and a 31.77% cumulative return through September 2015.  In reality, Defendants had experienced cumulative trading losses since the Pool's inception.

31.   Throughout the Relevant Period, Defendants provided Pool Participants false information about the supposed success of the Pool through Defendants' website and other communications.

32.   Defendants provided false information about the Pool's trading results knowingly or with reckless disregard for the truth.

33.   Defendants consistently lost money trading at FCM 1 in both 2014 and 2015 and, as of November 2015, were prohibited from any further trading at FCM 1.

34.    By October 31, 2015, all but approximately $160 of the then-remaining Pool Participant funds (*i.e.*, those funds not transferred to FCM 1) had been transferred either to a Van Beuningen personal bank account or a DeBrink Trading, LLC bank account or withdrawn as cash by Van Beuningen.

35.    Defendants received an additional $40,000 from a Pool Participant on or about November 17, 2015 and an additional $100,000 from a Pool Participant on or about January 5, 2016.    These additional Pool Participant funds were misappropriated and never transferred to a Pool FCM trading account.

36.    Pursuant to Defendants' agreements with Pool Participants, Defendants were entitled to a fee of 3.5% of the Pool "assets under management" Defendants, however, misappropriated Pool Participant funds, taking far more from the Pool than they were entitled to under these agreements.

37.    Other than the account at FCM 1, the Pool did not have any other active futures trading accounts during the Relevant Period.

C.    **Throughout the Relevant Period, Defendants Provided False Account Statements and Made Other Misrepresentations to Pool Participants**

38.    Once Pool Participants invested in the Pool, Defendants provided them with password-protected access to restricted areas of Defendants' website.

39.    In these restricted areas of Defendants' website, Pool Participants could access and view their account statements prepared by Defendants that

purported to show the net value of their interests in the Pool, as well as the profit or loss on their investments.

40. Defendants prepared and posted on the website account statements for Pool Participants during the Relevant Period.

41. Throughout the Relevant Period, the Pool Participant account statements accessible via the website were inaccurate and did not reflect the trading losses. For example, as recently as March 2016, Defendants falsely provided Pool Participants with online account statements that claimed the five Pool Participants were experiencing an average 37.47% return on their $505,000 combined investment.

42. Throughout the Relevant Period, Defendants also provided Pool Participants—in person, over the telephone, and via email—false information about, among other things, Defendants' trading, the supposed success of the Pool, the net value of Pool Participants' investments, and the risks associated with investing in the Pool,

43. Defendants made the misrepresentations in the account statements knowing them to be false or with reckless disregard as to their truth.

44. The home page of the website was active and available to members of the general public until approximately November 10, 2015, after which,

Defendants made all areas of the website accessible only to registered users with a password.

**D.    Defendants Fabricated FCM Statements to Cover Up Their Trading Losses**

45.    In October 2015, FCM 1 noticed an inconsistency between the Pool's trading results at FCM 1 and the returns reported by Defendants on the *www.debrinktrading.com* website.

46.    More specifically, and as alleged above, Defendants were reporting a 19.14% return for 2014 and a 31.77% cumulative return for the Pool through September 2015.   However, the Pool's trading account with FCM 1 showed trading losses for these time periods.

47.    FCM 1 asked Defendants to explain the discrepancy.

48.    In response, Van Beuningen emailed to Defendants' introducing broker ("IB") two account statements purportedly from FCM 2.   Defendants' IB then forwarded the two documents to FCM 1 for its review.

49.    These two account statements purportedly from FCM 2 were addressed to:

> DeBrink/Parker Trading
> 1299 Appling Drive
> Charleston, SC 29469

50.   The two account statements purportedly from FCM 2 were dated "September 30, 2015" and "September 31, 2015" and showed an account balance in excess of $500,000.

51.   Because the month of September does not have 31 days in it, FCM 1 became suspicious and contacted FCM 2 to try to verify the existence of DeBrink's second trading account there.

52.   FCM 2 examined the purported account statements and concluded that they were complete fabrications.  FCM 2 further advised FCM 1 that DeBrink did not have an account with FCM 2.  FCM 2 also noted that the Charleston address provided was fictitious.

53.   On or about October 29, 2015, FCM 1 froze DeBrink's account, which had a balance of less than $5,400.

54.   Defendants did not then (and have not ever) told Pool Participants that the Pool's account with FCM 1 has been frozen.

## E.   Defendants Do Not Have Any Other Trading Accounts with Registered FCMs That Could Support the Pool's Purported Trading Profits

55.   Van Beuningen has a futures trading account in his name with FCM 2. It was opened in 2011.

56.   However, after some trading in 2011 and 2012, the FCM 2 account went mostly dormant beginning in March 2013, with an account balance of

approximately $30, and had no trades at all between January 2014-November 2015.

57.     In late November and early December 2015, Van Beuningen deposited $15,000 into the FCM 2 account and started trading futures again.

58.     At that time, FCM 2 asked Van Beuningen to fill out new account opening forms. In his account opening forms, Van Beuningen represented that it was an individual account and that no one else had an interest in it. In early January, Van Beuningen subsequently deposited another $45,000 into the FCM 2 account.

59.     Besides the DeBrink account at FCM 1 and the Van Beuningen account at FCM 2, Defendants do not own or operate any other futures trading accounts.

## F.     **Defendants Failed to Respond to a Commission Subpoena**

60.     Defendants did not respond to a Commission subpoena for documents, and Van Beuningen did not appear for sworn testimony pursuant to the same Commission subpoena. The Commission subpoena was delivered to Van Beuningen's home and office.

61.     Moreover, Van Beuningen returned the Commission subpoena to the Commission with a note that he "did not want" the delivery.

## VI.  VIOLATIONS OF THE ACT AND REGULATIONS

### Count I—Fraud by Commodity Pool Operator

### Violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012)
### (Both Defendants)

62.    Paragraphs 1 through 61 are re-alleged and incorporated herein by reference.

63.    A "commodity pool" is defined under Section 1a(10)(A) of the Act, 7 U.S.C. § 1a(10) (2012), as "any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading commodity interests," including for the trading of futures.

64.    A    commodity    pool    operator    ("CPO")    is    defined    under Section 1a(11)(A) of the Act, 7 U.S.C. § 1a(11)(A)(i) (2012), as any person

> engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> (I)   commodity for future delivery . . . .

65.    DeBrink has been operating as a CPO in that it engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise,

and in connection therewith, solicited, accepted, or received funds, securities, or property from others for the purpose of trading futures.

### Van Beuningen Acted as an AP of a CPO

66.     Regulation 1.3(aa), 17 C.F.R. § 1.3(aa) (2015), defines an associate person ("AP") of a CPO as "any natural person who is associated in any of the following capacities with . . . (3) [a] commodity pool operator as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for participation in a commodity pool or (ii) the supervision of any person or persons so engaged . . . ."

67.     At all times relevant to this Complaint, Van Beuningen acted as an AP of DeBrink because he was a partner, officer, employee and/or agent of DeBrink and he solicited and accepted funds, securities, or property from investors for DeBrink for participation in a commodity pool.

### Violations of Section 4o of the Act

68.     Section 4o(1) of the Act makes it unlawful for a "commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly–

    (A)    to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B)    to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

69.    At all times relevant to this Complaint, DeBrink, acting as a CPO, and Van Beuningen acting as an AP, through the use of the mails or others means or instrumentalities of interstate commerce (including through use of emails, telephone, and Defendants' website), have violated Section 4o of the Act by, among other things, providing FCM 1 with fabricated futures trading account statements purportedly from FCM 2; misappropriating Pool Participants' funds; providing Pool Participants false account statements that misrepresented the Pool's profitability and/or the value of Pool Participants' interest in the Pool; and by misrepresenting and omitting material facts on Defendants' website and in other communications with Pool Participants regarding the Pool's returns, as well as other material facts regarding the Pool and Pool Participants' interest in the Pool.

70.    Defendants engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

71.    When Van Beuningen committed the acts, omissions, and/or failures described above, he acted within the scope of his agency, employment, and office

at DeBrink; therefore, such acts, omissions, and/or failures are deemed to be those of DeBrink pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2.

72.　At all times relevant to this Complaint, Van Beuningen controlled DeBrink, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DeBrink's conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Van Beuningen is liable for DeBrink's violations of Section 4o of the Act.

73.　Each issuance of a fabricated futures trading account statement or a false Pool Participant account statement, each act of misappropriation, and each misrepresentation or omission of material fact, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the Act.

## Count II – Futures Fraud

### Violations of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a) (2012) (Both Defendants)

74.　The allegations set forth in Paragraphs 1 through 73 are re-alleged and incorporated herein by reference.

75.　Section 4b(a) of the Act makes it unlawful:

(1)　for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or

-18-

subject to the rules of a designated contract market, for or on behalf of any other person;

*     *     *

(A)   to cheat or defraud or attempt to cheat or defraud the other person;

(B)   willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;

(C)   willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person . . . .

76.   As described above, Defendants violated Section 4b(a)(1)(A)-(C) of the Act by, among other things, in or in connection with futures contracts made for or on behalf of other persons, misappropriating Pool Participants' funds, providing Pool Participants false account statements that misrepresented the Pool's profitability and/or the value of Pool Participants' interest in the Pool and misrepresenting and omitting material facts on Defendants' website and in other communications with Pool Participants regarding the Pool's returns, as well as other material facts regarding the Pool and Pool Participants' interest in the Pool.

77.   Defendants engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

78.     When Van Beuningen committed the acts, omissions, and/or failures described above, he acted within the scope of his agency, employment, and office at DeBrink; therefore, such acts, omissions, and/or failures are deemed to be those of DeBrink pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2.

79.     At all times relevant to this Complaint, Van Beuningen controlled DeBrink, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DeBrink's conduct alleged in this Count;  therefore, pursuant to Section 13(b) of the Act, Van Beuningen is liable for DeBrink's violations of Section 4b(a)(1)(A)-(C) of the Act.

80.     Each issuance of a false Pool Participant account statement, each act of misappropriation, and each misrepresentation or omission of material fact, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act.

### Count III – Fraudulent and Deceptive Practices

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and
Regulation 180.1, 17 C.F.R. § 180.1(a) (2015)
(Both Defendants)**

81.     The allegations set forth in Paragraphs 1 through 80 are re-alleged and incorporated herein by reference.

82.     Section 6(c)(1) of the Act makes it unlawful for any person, directly

or indirectly, to:

> use or employ, or attempt to use or employ, in connection with any
> swap, or a contract of sale of any commodity in interstate commerce,
> or for future delivery on or subject to the rules of any registered entity,
> any manipulative or deceptive device or contrivance, in contravention
> of such rules and regulations as the Commission shall promulgate by
> not later than 1 year after the date of enactment of the Dodd-Frank
> Wall Street Reform and Consumer Protection Act [July 21, 2010] . . .

83.     Regulation 180.1(a) provides:

> It shall be unlawful for any person, directly or indirectly, in
> connection with any swap, or a contract of sale of any commodity in
> interstate commerce, or contract for future delivery on or subject to
> the rules of any registered entity, to intentionally or recklessly:
>
>> (1) Use or employ, or attempt to use or employ, any
>>     manipulative device, scheme, or artifice to defraud;
>> (2) Make, or attempt to make, any untrue or misleading
>>     statement of material fact or to omit to state a material
>>     fact necessary in order to make the statements made not
>>     untrue or misleading;
>> (3) Engage, or attempt to engage, in any act, practice, or
>>     course of business, which operates or would operate as a
>>     fraud or deceit upon any person . . . .

84.     As described above, Defendants violated Section 6(c)(1) of the Act

and Regulation 180.1(a) by, among other things, in connection with futures

contracts, misappropriating Pool Participants' funds; providing FCM 1 with

fabricated futures trading account statements purportedly from FCM 2; providing

Pool Participants false account statements that misrepresented the Pool's

profitability and/or the value of Pool Participants' interest in the Pool; and misrepresenting and omitting material facts on Defendants' website and in other communications with Pool Participants regarding the Pool's returns, as well as other material facts regarding the Pool and Pool Participants' interest in the Pool.

85.    Defendants engaged in the acts and practices described above intentionally or recklessly.

86.    When Van Beuningen committed the acts, omissions, and/or failures described above, he acted within the scope of his agency, employment, and office at DeBrink; therefore, such acts, omissions, and/or failures are deemed to be those of DeBrink pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2.

87.    At all times relevant to this Complaint, Van Beuningen controlled DeBrink, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DeBrink's conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Van Beuningen is liable for DeBrink's violations of Section 6(c)(1) of the Act and Regulation 180.1.

88.    Each issuance of a fabricated futures trading account statement or a false Pool Participant account statement, each act of misappropriation, and each misrepresentation or omission of material fact, including, but not limited to, those

specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the Act and Regulation 180.1(a).

### Count IV- Failure to Register as a CPO

### Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012) (Both Defendants)

89.     The allegations set forth in Paragraphs 1 through 88 are re-alleged and incorporated herein by reference.

90.     Pursuant to Section 4m(1) of the Act, it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

91.     DeBrink operated as a CPO because it engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received funds, securities, or property from others for the purpose of trading futures.

92.     DeBrink utilized the mails or others means or instrumentalities of interstate commerce (including emails, telephone and Defendants' website), directly or indirectly, to engage in its business as a CPO.

93.     At all times relevant to this Complaint, DeBrink was not registered with the Commission as a CPO.

94.    At all times relevant to this Complaint, DeBrink was not entitled to exemption from registration with the Commission.

95.    DeBrink engaged in activities described herein without having registered as a CPO, in violation of Section 4m(1) of the Act.

96.    At all times relevant to this Complaint, Van Beuningen controlled DeBrink, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DeBrink's conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Van Beuningen is liable for DeBrink's violations of Section 4m(1).

97.    Each use of the mails or any means or instrumentality of interstate commerce by DeBrink while acting as a CPO, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act.

### Count V – Failure to Register as an AP

**Violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), and
Regulation 3.12(a), 17 C.F.R. § 3.12(a) (2015)
(Both Defendants as to the 4k(2) violation
and Van Beuningen only as to the 3.12(a) violation )**

98.    The allegations set forth in Paragraphs 1 through 97 are re-alleged and incorporated herein by reference.

99.     Section 4k(2) of the Act provides, "It shall be unlawful for any person to be associated with commodity pool operator as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool . . . unless such person is registered with the Commission under the Act as an associated person of such commodity pool operator . . . ."

100.    Regulation 3.12(a) provides, "It shall be unlawful for any person to be associated with a . . . commodity pool operator . . . as an associated person unless that person shall have registered under the Act as an associated person of that . . . commodity pool operator . . . ."

101.    At all times relevant to this Complaint, Van Beuningen was an AP of the CPO DeBrink because he was a partner, officer, employee and/or agent of DeBrink, and he solicited and accepted funds, securities, or property from investors for DeBrink for participation in a commodity pool.

102.    At all times relevant to this Complaint, Van Beuningen was not registered as an AP with the Commission, in violation of Section 4k(2) of the Act and Regulation 3.12(a).

103. At all times relevant to this Complaint, DeBrink permitted Van Beuningen to become and remain associated with it as an AP and knew that Van Beuningen was never registered as an AP of DeBrink; therefore, DeBrink violated Section 4k(2) of the Act.

104. At all times relevant to this Complaint, Van Beuningen controlled DeBrink, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DeBrink's conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Van Beuningen is liable for DeBrink's violations of Section 4k(2) of the Act.

105. When Van Beuningen committed the acts, omissions, and failures described herein, he did so within the scope of his agency, employment, and office with DeBrink; therefore, Van Beuningen's acts, omissions, and failures are deemed those of DeBrink pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2.

**Count VI –Failure to Operate CPO**
**as Separate Legal Entity/Commingling of Funds**

**Violations of Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2015)**
**(Both Defendants)**

106. The allegations set forth in Paragraphs 1 through 105 are re-alleged and incorporated herein by reference.

107. Regulation 4.20(a) requires a CPO to operate its commodity pool as a legal entity separate from that of the CPO.

108. Regulation 4.20(b) requires that all funds, securities and other property received by a CPO from a prospective or existing pool participant for purchase of an interest or as an assessment must be received in the commodity pool's name.

109. Regulation 4.20(c) prohibits a CPO from commingling the property of any pool it operates with the property of any other person.

110. At all times relevant to this Complaint, DeBrink, while acting through Van Beuningen and while acting as a CPO, violated Regulation 4.20(a)-(c) by: (i) failing to operate the Pool as a legal entity separate from DeBrink, the CPO; (ii) receiving Pool Participant funds in the name of DeBrink, rather than in the name of the Pool; and (iii) commingling property of the Pool with non-Pool property.

111. When Van Beuningen committed the acts, omissions, and/or failures described above he acted within the scope of his agency, employment, and office at DeBrink; therefore, such acts, omissions, and/or failures are deemed to be those of DeBrink pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2.

112. At all times relevant to this Complaint, Van Beuningen controlled DeBrink, directly or indirectly, and did not act in good faith or knowingly induced,

directly or indirectly, DeBrink's conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Van Beuningen is liable for DeBrink's violations of Regulation 4.20(a)-(c).

113.   Each failure to operate the Pool as a separate legal entity, receipt of Pool Participant funds in a name other than the Pool, and act of commingling the property of the Pool with non-Pool property, including, but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Regulation 4.20(a)-(c).

## VII.  <u>RELIEF REQUESTED</u>

114.   WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, and pursuant to its own equitable powers:

> a.)   Find that Defendants violated Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1), and 6(c)(1) of the Act,   7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1), and 9(1) (2012); and Regulations 3.12(a), 4.20(a)-(c), and 180.1(a), 17 C.F.R. §§ 3.12(a), 4.20(a)-(c), and 180.1(a) (2015);

> b.)   Enter orders of permanent injunction enjoining each Defendant and his/its  affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from

violating Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1), and 6(c)(1) of

the Act,   7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1), and 9(1)

(2012); and Regulations 3.12(a), 4.20(a)-(c), and 180.1(a), 17 C.F.R.

§§ 3.12(a), 4.20(a)-(c), and 180.1(a) (2015);

c.)   Enter orders of permanent injunction restraining and enjoining each

Defendant   and   his/its   affiliates,   agents,   servants,   employees,

successors, assigns, attorneys, and all persons in active concert with

him/it, from directly or indirectly:

1)   Trading on or subject to the rules of any registered entity (as

that term is defined in Section 1a(40) of the Act, 7 U.S.C.

§1a(40) (2012));

2)   Entering into any transactions involving "commodity interests"

(as that term is defined in Regulation1.3(yy), 17 C.F.R.

§ 1.3(yy) (2014)), for their own personal account or for any

account in which they have a direct or indirect interest;

3)   Having any commodity interests traded on their behalf;

4)   Controlling or directing the trading for or on behalf of any other

person or entity, whether by power of attorney or otherwise, in

any account involving commodity interests;

5)      Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6)      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

7)      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012), registered, exempted from registration, or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

d.)   Enter an order directing Defendants, as well as any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations

of the Act and the Regulations as described herein, and pre- and post-judgment interest thereon from the date of such violations;

e.) Enter an order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedure as the Court may order, all contracts and agreements, whether express or implied, entered into between, with, or among Defendants and any customer, investor, or pool participant whose funds were received by Defendants as a result of the acts and practices which constituted violations of the Act and the Regulations, as described herein;

f.) Enter an order directing Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every customer, investor, and pool participant whose funds any Defendant received, or caused another person or entity to receive, as a result of the acts and practices constituting violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

g.) Enter an order directing Defendants, as well as any successors thereof, to provide a full accounting of all customer, investor, and pool participant funds they have received as a result of the acts and

practices constituting violations of the Act and Regulations, as described herein;

h.) Enter an order directing Defendants to pay civil monetary penalties, plus post-judgment interest thereon, in the amount of the greater of: (1) $140,000 for each violation of the Act and Regulations; or (2) triple Defendants' monetary gain from violations of the Act and Regulations;

i.) Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

j.) Enter an order for such other and further relief as the Court deems just and proper.

Dated: March 28, 2016       Respectfully submitted by,

JOHN A. HORN
UNITED STATES ATTORNEY

Austin M. Hall
Georgia Bar No. 310751
Assistant United States Attorney
600 Richard B. Russell Building
75 Ted Turner Dr. SW
Atlanta, GA 30303-3309
Tel: 404.581.6000
Fax: 404.581.6181
Austin.Hall@usdoj.gov

and

Jennifer J. Chapin, MO Bar #50554
Jeff Le Riche, MO Bar #46557
PRO HAC VICE PENDING
U.S. Commodity Futures Trading Commission
Division of Enforcement
4900 Main Street, Suite 500
Kansas City, MO 64112
816-960-7746 (Chapin)
816-960-7745 (Le Riche)
816-960-7751 (fax)
jchapin@cftc.gov
jelriche@cftc.gov

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1.B**

In accordance with L.R. 7.1.D, N.D. Ga., I, Jennifer J. Chapin, hereby certify that, the foregoing was prepared using Times New Roman, 14 point and complies with L.R. 5.1.B, N.D. Ga.

*/s/ Jennifer J. Chapin*
Jennifer J. Chapin